UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:25-cv-61310-AHS

**ALICIA ARMAS,**
*individually and on behalf of all others similarly situated,*

    Plaintiff,

v.

**PELOTON INTERACTIVE, INC.,**

    Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**FIRST AMENDED CLASS ACTION COMPLAINT**[1]

Plaintiff Alicia Armas brings this class action against Defendant Peloton Interactive, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. To promote its apparel, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations.

---

[1] Amended as a matter of course pursuant to Federal Rule of Civil Procedure 15.

3. Through this action, Plaintiff seeks statutory damages to recover for Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA") and supplemental jurisdiction over the FTSA claims.

5. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District. Additionally, Plaintiff's telephone number has an area code that specifically coincides with locations in Florida.

## PARTIES

6. Plaintiff is a natural person entitled to bring this action under the TCPA, and a citizen and resident of Broward County, Florida. Plaintiff's cellular telephone at issue (561-***-3904) (the "3904 Number") has an area code associated geographically with Florida.

7. Defendant is a Delaware corporation with its headquarters located in New York, New York.

**FACTS**

8.        On or about March 26, 2025, Plaintiff requested to opt-out of Defendant's text messages by replying with a stop instruction as reflected by the following screenshot:



9.        Despite acknowledging and promising to honor Plaintiff's request, Defendant ignored the request and continued text messaging Plaintiff, as demonstrated by the following sample screenshots:

3



10.  The above-referenced messages were received by Plaintiff on June 15, 2025 (labeled as "Sunday 12:04 PM"), June 16, 2025 (labeled as "Monday 12:04 PM") and June 18, 2025 (labeled as "Wednesday 4:03 PM").

11.  Overall, Defendant sent Plaintiff approximately twenty-two (22) text messages after Plaintiff's initial stop request advertising Defendant's apparel.

12.  Plaintiff was in Florida when she received Defendant's text messages.

13.  The purpose of Defendant's text messages was to encourage Plaintiff to purchase Defendant's apparel.

4

14. Plaintiff reasonably revoked her consent to receive text messages from Defendant. Notwithstanding, Defendant continued to send text messages for the purpose of encouraging Plaintiff to purchase Defendant's apparel.

15. Plaintiff never opted back into text messages from Defendant after her "stop" request on March 26, 2025.

16. Given Defendant's use of an automated text messaging platform, as reflected by the auto-reply opt-out confirmation Plaintiff received, depicted above, Defendant had the ability to immediately opt Plaintiff out of further communications but chose not to do so. Accordingly, it was unreasonable for Defendant to continue texting Plaintiff given its ability to immediately opt Plaintiff out and its representation to Plaintiff that she had been opted out of further communications.

17. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations, but Defendant continued to text message Plaintiff.

18. Defendant sent at least two solicitations after Plaintiff's initial opt-out request.

19. Plaintiff is the regular user of the 3904 Number.

20. Plaintiff utilizes the 3904 Number for personal purposes, and the number is Plaintiff's residential telephone line and only means of reaching Plaintiff when she is at home. Plaintiff does not have a home landline and instead uses the 3904 Number as her home phone. Moreover, the 3904 Number is listed on the National Do Not Call Registry.

21. Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

22. Defendant's refusal to honor Plaintiff's opt-out instructions for over several months demonstrates that Defendant has not instituted procedures that meet the minimum requirements of section 64.1200(d),

23. Defendant's lack of procedures resulted in Defendant failing to (1) honor opt-out requests within a reasonable period of time that does not exceed 30 days; (3) train its personnel engaged in telemarketing in the use and maintenance of a do-not-call list; (4) place consumers who text Defendant with "stop" instructions promptly on an internal do-not-call list; and (5) maintain a record of consumers' do-not-call "stop" text requests.

24. Defendant did not maintain procedures for handling and processing text message opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made opt-out requests and the requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages for months.

25. Plaintiff and the Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

26. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

27. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests, caused Plaintiff and the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

28. The above so-called "Peloton Apparel" text messages were sent by Defendant to Plaintiff and the Class Members utilizing an "***automated***" a text messaging platform (the "Platform"). *See* www.onepeloton.com/terms-of-service. The Platform automatically sent text message blasts to Plaintiff's and the Class members' stored telephone numbers with no human involvement.

29. Defendant's use of generic text messages further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

30. The Platform utilized by Defendant to text message Plaintiff and the Class members has the capacity to store telephone numbers to be called using a random or sequential number generator and to dial such numbers.

31. The Platform has the capacity to select and dial numbers automatically from a list of numbers.

32. The Platform has the capacity to schedule the time and date for future transmission of text messages.

33. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

34. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

35. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

36. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

37. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

38. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

39. Compliance with the FTSA will not result in Defendant having to cease its business operations.

40. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

41. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

42. Defendant sent the same or similar text messages to Plaintiff and each putative Class member in that the content of the messages consisted of advertising the availability of Defendant's apparel.

43. Defendant's text messages caused Plaintiff and the Class Members actual harm, including invasion of privacy, intrusion upon seclusion, and intrusion into the peace and quiet in a realm that is private and personal to Plaintiff and the Class members. *See Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *see also Muccio v. Glob. Motivation, Inc*., No. 23-10081, 2023 U.S. App. LEXIS 22436 (11th Cir. Aug. 25, 2023) (same for FTSA claim arising from unwanted text messages).

## CLASS ALLEGATIONS

**PROPOSED CLASS**

44. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

45. Plaintiff brings this case on behalf of following individuals:

**TCPA IDNC Class: All persons within the United States who, within the four years prior to the filing of this action, (1) received more than one text message within any 12-month period, (2) regarding Defendant's apparel and/or goods, (3) to said person's residential cellular telephone number, (4) after making a request to Defendant to not receive future text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**

**TCPA ATDS Class: All persons within the United States who, within the four years prior to the filing of this action, received one or more text messages, sent utilizing the Platform, regarding Defendant's apparel and/or goods, to said person's cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

**FTSA "STOP" Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, regarding Defendant's apparel and/or goods, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

**FTSA ATDS Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, sent utilizing the Platform, regarding Defendant's apparel and/or goods, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

46. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

47. Defendant and its employees or agents are excluded from each Class.

**NUMEROSITY**

48.     Upon information and belief, given Defendant's use of the automated Platform and refusal to honor opt-out requests, Defendant sent text messages to cellular telephone numbers belonging to more than 40 consumers belonging to each of the above defined Classes. The Class members, therefore, are so numerous that joinder of all members is impracticable.

49.     Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records.

**COMMON QUESTIONS OF LAW AND FACT**

50.     There are numerous questions of law and fact common to members of the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the members of each Class are:

   a) Whether Defendant violated 47 C.F.R. § 64.1200(d);

   b) Whether Defendant violated 47 U.S.C. § 227(b);

   c) Whether Defendant violated the FTSA;

   d) Whether Defendant's conduct was knowing and willful;

   e) Whether Defendant adhered to requests by Class members to stop sending text messages to their telephone numbers;

   f) Whether Defendant keeps records of text recipients who revoked consent to receive texts;

   g) Whether Defendant has any written policies for maintaining an internal do not call list;

   h) Whether Defendant violated the privacy rights of Plaintiff and members of the class;

   i) Whether Defendant complies with the National Do Not Call Registry;

j) Whether the purpose of Defendant's text messages was to solicit the sale of its apparel;

k) Whether Defendant is liable for damages, and the amount of such damages; and

l) Whether Defendant should be enjoined from such conduct in the future.

51. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

52. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories outlined above.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

53. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

54. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

55. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the TCPA IDNC Class)**

56. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than

>the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

58. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity that, like Defendant, sends telemarketing text messages to wireless telephone numbers.

59. Plaintiff and the Class Members are residential telephone subscribers who received more than one telemarketing text message from Defendant, who has failed to implement adequate procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests within a reasonable period of time that does not exceed 30 days, and its lack of a written policy for maintaining an internal do-not-call list.

60. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

61. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

62. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

63. Defendant failed to honor Plaintiff's and the Class members' opt-out requests within a reasonable period time.

64. In violation of section 64.1200(d)(1), Defendant does not have written policy for maintaining a do-not-call list.

65. In violation of section 64.1200(d)(2), Defendant does not train its personnel engaged in telemarketing on the existence and use of a do-not-call-list with respect to inbound "stop" text messages like those sent by Plaintiff and the Class members. Defendant's lack of adequate training resulted in Plaintiff and the Class members receiving text messages after they texted Defendant with "stop" or similar opt-out instructions.

66. In violation of section 64.1200(d)(3), Defendant failed to record Plaintiff's and the Class Members' opt-out requests on a do-not-call list, and failed to honor Plaintiff's and the Class Members' do-not-call requests within a reasonable time.

67. In violation of section 64.1200(d)(6), Defendant does not maintain a do-not-call list consisting of consumers' inbound "stop" text message requests to not receive text messages, and therefore does not honor those requests within a reasonable period of time.

68. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

### COUNT II
### Violations of 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the ATDS Class)

69. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

70. The TCPA prohibits (1) any person from text messaging a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

71. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded

14

voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

72. As it admits on its website, Defendant utilized an "automated" system to text message Plaintiff and the ATDS Class members. *See* www.onepeloton.com/terms-of-service.

73. The "automated" system utilized by Defendant to text message Plaintiff and the Class members has the capacity to store telephone numbers to be called using a random or sequential number generator and to dial such numbers.

74. Plaintiff and the ATDS Class members made requests to Defendant to not receive texts from Defendant.

75. Plaintiff and the ATDS Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

76. Defendant sent automated text messages to Plaintiff and the ATDS Class Members without their express consent.

77. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to send non-emergency text messages to the cell phones of Plaintiff and ATDS Class members without their prior express consent.

78. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and ATDS Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

## COUNT III
## VIOLATION OF FLA. STAT. § 501.059(5)
### (On Behalf of FTSA "STOP" Class)

79. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

80. In pertinent part, the FTSA provides:

> A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:
>
> (a) Made by or on behalf of the seller whose goods or services are being offered; or
>
> (b) Made on behalf of a charitable organization for which a charitable contribution is being solicited.

Fla. Stat. § 501.059(5).

81. "'Telephone solicitor' means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." Fla. Stat. § 501.059(1)(i).

82. Defendant is a telephone solicitor as defined under the FTSA.

83. Plaintiff and the Class Members are consumers who received one or more text messages regarding Defendant's goods and services more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages.

84. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

16

85. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages.

86. Defendant failed to honor Plaintiff and the Class members' opt-out requests.

87. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

88. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## COUNT IV
## VIOLATION OF FLA. STAT. § 501.059(8)(a)
### (On Behalf of FTSA ATDS Class)

89. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

90. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

91. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

92. Plaintiff and the Class members revoked any consent they may have provided Defendant by responding with a "stop" or similar opt-out instruction.

93. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

94. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls (texts) to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent more than fifteen (15) days after Plaintiff and the Class members communicated to Defendant that they did not wish to receive text messages

95. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

96. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

97. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of each Class as applicable under the FTSA and/or TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

d) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Dated: August 25, 2025

Respectfully submitted,

By: */s/ Manuel Hiraldo*
**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

Mariya Weekes (FBN 56299)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL  33134
Tel: (786) 879-8200
Fax: (786) 879-7520
mweekes@milberg.com

**SHAHABUDEEN KHAN**
Florida Bar No.:  658782
shahabudeen@jibraellaw.com
**FAARIS K. UDDIN, ESQ.**
Florida Bar No.: 1054470
E-mail: faaris@jibraellaw.com
**ZANE C. HEDAYA, ESQ.**

Florida Bar No.: 1048640
E-mail: zane@jibraellaw.com
**GERALD D. LANE, JR., ESQ.**
Florida Bar No.: 1044677
E-mail: gerald@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone: 813-340-8838

*COUNSEL FOR PLAINTIFF*